# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**,   ) | |
| ) | |
| Plaintiff,   ) | |
| ) | |
| v.   ) | Case No. 11 CR 469-2 |
| ) | |
| **DARRELL JACKSON**,   ) | |
| ) | |
| Defendant.   ) | |

## MEMORANDUM ORDER

This Court has received the October 17 Government's "Position Paper as to the Pre-Sentence Investigation Report and Sentencing Factors regarding Darrell Jackson" ("Jackson"), one of the principal malefactors in a complex scheme that resulted in the identity theft of more than 60 people, a scheme that caused money to be stolen from those victims' bank accounts to the tune of nearly $800,000. What that Position Paper seeks to explain are the reasons for the government's request that Jackson be sentenced to a comparatively modest term of 73 months' imprisonment despite the outrageous criminal conduct on the part of Jackson and his already-sentenced co-defendant Willie Jones ("Jones"), both of whom employed their skills as professional pickpockets as a stepping stone to the far more egregious crimes to which Jackson and Jones have pleaded guilty.

This Court expresses no views as to the appropriateness of the government's decision, as previously announced in its March 7, 2014 plea agreement ("Agreement") with Jackson, to move under Sentencing Guideline § 5K1.1 to depart from the otherwise applicable Guidelines range, a matter that is left entirely for prosecutorial determination. Instead this memorandum order is

issued sua sponte to alert the parties to two serious problems posed (or, perhaps more accurately, <u>not</u> posed) by the Position Paper.

To begin with, a review of the bidding reflects that Jackson was charged with 10 counts that did not call for any mandatory minimum sentence, plus one count of aggravated identity theft -- Count Two, charged under 18 U.S.C. § 1028A(a)(1)[1] -- that carries a two-year term that must be imposed consecutively to the sentence called for by the other count or counts of conviction (Section 1028A(b)(2)).

Under those circumstances it does not of course pose a problem for the Agreement to have included a guilty plea as to (1) only one count (Count One) that does not involve a mandatory minimum sentence plus (2) the charge of aggravated identity theft (Count Two). Because plea agreements and the consequent sentencing typically take account of all relevant criminal conduct on the part of a defendant, a procedure that calls for dismissal of the remaining counts at the time of sentencing is regularly followed because it makes no difference in the ultimate sentencing outcome.

But what does give rise to serious concern is the fact that the post-Agreement Presentence Investigation Report ("PSI") has disclosed that Jackson's extensive prior criminal history places him in Criminal History Category IV because he has previously amassed <u>9</u> criminal history points instead of <u>0</u>, as the Agreement had indicated.[2] That being the case, what the government's Position Paper reflects is a major change from what had been believed, at the time the

---

[1] Further references to provisions of Title 18 will take the form "Section --," omitting the prefatory "18 U.S.C. §."

[2] All eight prior convictions known to the government at the time of the Agreement were for sentences imposed between 1986 and 1992 (when Jackson was between 17 and 25 years old), while the thorough search undertaken in the preparation of the PSI picked up other much more recent and serious offenses.

Agreement was entered into, to be a modest reduction from the low end of the originally-believed Guidelines range (87 to 108 months) to an anticipated Guideline-§ 5K1.1-recommended 73 months, some 16%, to a steep reduction from the low end of a newly-learned-of actual Guidelines range (121 to 151 months) to the same 73-month recommendation, a full 40% reduction.

To call into serious question the government's apparent lack of thought, in which it has simply parroted an originally anticipated recommendation despite a dramatic change in the now-known facts from the flawed premise on which that anticipated recommendation was based,[3] would be reason enough to call for further consideration on the government's part. But there is more -- here is Section 1028A(b)(3):

> [I]n determining any term of imprisonment to be imposed for the felony during which the means of identification was transferred, possessed, or used, a court shall not in any way reduce the term to be imposed for such crime so as to compensate for, or otherwise take into account, any separate term of imprisonment imposed or to be imposed for a violation of this section; . . . .

On that score the government has also not considered the teaching of our Court of Appeals in United States v. Roberson, 474 F.3d 432 (7th Cir. 2007), in which the District Judge was also confronted with a sentence to be imposed on two criminal charges, just one of which carried a mandatory minimum consecutive sentence. There the District Judge engaged in a Section 3553(a) analysis that produced a global sentence that effectively conflated the two

---

[3] It will be remembered that the Agreement did not contain a contractual Fed. R. Crim. P. 11(c)(1)(C) mutually-agreed-upon binding sentence, rather than a non-binding anticipated recommendation. And as always, here Agreement ¶ 10.e confirmed the universal understanding that the Probation Office would conducts its own investigation, that the Court's ultimate determination based on the later-learned facts (and law) would govern the final Guideline determination and that defendant Jackson would have no right to withdraw his guilty plea if the final determination did not jibe with the Agreement's original assumptions.

crimes for sentencing purposes. But our Court of Appeals held that such a global approach did not pay adequate heed to the purpose and significance of the congressionally-imposed consecutive-sentence ukase attached to the specified mandatory minimum, even though the court "acknowledge[d] the tension with section 3553(a)" (474 F.3d at 436). Instead it held the right way to handle the situation was to impose a Guideline-guided sentence on the non-mandatory-minimum charge, then to add on the full consecutive term called for by the mandatory-minimum count. As Roberson, 474 F.3d at 437 put it:

> The district judge was therefore required to determine the proper sentence for the bank robbery [the non-mandatory-minimum charge] entirely independently of the section 924(c)(1) [the consecutive-mandatory-sentence charge] add-on . . . .

Just so here. According to the government's Mem. 5, the PSI's Guideline calculations (with which the government has agreed) established a total offense level of 29 that, when coupled with Jackson's 9 criminal history points and a consequent criminal history level of IV, set an advisory Guidelines range of 121 to 151 months' imprisonment apart from the already-mentioned additional mandatory consecutive 24-month term. What that means is that when that 24-month mandatory minimum sentence attributable to Count Two is subtracted from the government's recommendation of a 73-month total custodial term for Jackson, the remaining 49 months are the only effective sentence on Count One. And when that is compared with the low end of the Guidelines range (121 months), the effective sentence on that count is just 40% of that low end -- fully 60% below the recommended figure.

With all respect, that drastic reduction clearly appears to do violence to any rational balancing between Jackson's indefensible crimes coupled with his serious and substantial prior criminal background (those two factors are to be considered on the one hand) and the high level of his cooperation in this case (to be considered on the other hand). That is very much out of

synch with anything that this Court has encountered from government counsel during its many years of criminal sentencing either (1) since the Guidelines were first adopted (when they were believed to be mandatory rather than just advisory) or (2) pre-Guidelines.

It also bears mention that the sentence that this Court imposed on co-defendant Jones on the same Count One was 160 months in custody, to which was added his 24-month consecutive mandatory minimum under the indictment's Count Ten. To be sure, Jones did not have going for him the positive (and hence mitigating) factors stressed in the Position Paper as to Jackson, but the extraordinarily sharp contrast between Jones' 160 months and the recommended effective 49 month term as to Jackson should also have been expected to prompt the type of further consideration by government counsel that is called for by the disclosure of the dramatically adverse Guideline calculation as to Jackson.

This Court does not seek to flout separation-of-powers principles by substituting its judgment for that of the prosecutorial branch. But it would consider itself to have been remiss if it had failed to call the government's flawed approach to the subject to the attention of the United States Attorney's office. It will await the government's reaction to what has been set out here.

_____
Milton I. Shadur
Senior United States District Judge

Date: October 21, 2014